May it please the court, my name is Dennis Moczniki, I represent the petitioner and I'd like to reserve two minutes for rebuttal. We submit that this case is really controlled by this circuit's recent decisions past January in Ali v. Ashcroft 394 F3rd 780. In that case, the facts were that the witness, the Somali woman testified that as she was being raped and tortured and the family being killed, the Hawi militia yelled out, take this Migden, is Saeed Bari going to protect you now? And this court noted that the country condition reports are very clear that in Somalia, the Hawi did attack these minority clans, the Migden clans, because of their supposed affiliation with the Bari government. In this case, even the Justice Department on page 10 of its brief concedes that in the certified record of pages 144 through 147, 373 and 393, it's established that Mr. Warsameh testified that the Hawi militia who attacked the house said, we'll be back to kill all you Migden. Now, they had started to rape his wife, they were plundering, and then they were gone away by a fighting with the Daroe, and they said, we'll be back to kill you Migden. It's the same case. It really isn't, though, because there's one of the most extensive negative credibility findings I've ever seen anywhere in this case, and the IJ comes to certain conclusions with which you're familiar, and I think that this person has lied. And I think that the IJ's determination in this case violates every single principle that this court has established for conducting credibility analysis. First of all, it's personalized and subjective findings. Second, it's in fact contradicted by the record. And third, the findings don't relate to the heart of the claim. I can give you examples of each. Number one. What about the part where he apparently admits that he left a whole lot of stuff out that was relevant, and he says, well, my attorney told me to leave that out? That's right. And he said that his attorney told him to leave it out. They did not issue a subpoena to the attorney or during the hearing asking the attorney to submit a response or anything like that. That's a perfectly understandable explanation. It doesn't mean that the attorney told him to leave it out. Remember, what you have here is he's talking to his attorney over the phone. In my own personal experience, I can say when I've talked to foreigners over the phone, there's a lot of times there's a lot of confusion when people are not speaking English as their first language. Apparently, the attorney probably told him something about it could affect venue, and he didn't construe this, and he explained it. He – when he was asked, he gave every single address he's lived at. He didn't hold back anything. There was no – there was a misunderstanding. Now, if that was a serious issue for this Court, the Court could have adjourned the matter, could have issued an order to the former attorney to submit a response. Did nothing. And the whole purpose is for a credibility analysis is to give the person an opportunity to respond. He did. And the Court finds nothing in the record to contradict that. Now, another example where they said – the Court said he's hiding something. Well – or he appears to be hiding something in his testimony. The Court didn't specify where in the testimony, didn't specify what he's hiding, or how it would have been relevant. Again, it's that generalized stuff that this Court has not approved. An example of – Was he represented by counsel? Yes. Not me. Did his other counsel say, let's have a timeout and bring in Attorney Ellermann and find out what Attorney Ellermann has to say? No. No. I think that's an issue – if the Court finds that relevant, the Court should have – could have done that. I think – I don't think there would be any issue of attorney-client privilege. I think that clearly Mr. Warsami would have waived it on that point. The reason apparently given was to avoid a transfer of venue, and the immigration judge who lives in the sea said, that fish isn't here. And that reflects Mr. Warsami's misunderstanding of it. And that could perfectly be. And that's why it was – if the Court wanted to pursue that point, they should have issued something to the attorney. Did his lawyer make that argument? Huh? Did his lawyer make that argument? The lawyer – there was – I made that argument on his appeal brief, yes. But did the lawyer make it right then and there? I don't recall at that point in the record. But there was nothing about that. On the other findings, for example, there was a statement, well, he should have known whether he was on British Airways or Kenyan Airways, which doesn't make sense when you consider that he didn't read English or understand English at the time. And we had no explanation how that relates to the heart of the asylum claim. On another point, the immigration judge said, well, he couldn't figure out whether he lived on 4th Street or 6th Street. That's not true, as I point out in the brief. In fact, he testified his wife said they moved from 4th Street to 6th Street. He didn't say he didn't know where it was. That was a mistake made by the immigration judge. On another point, the immigration judge says he failed to provide – explain how his brother got back from the shop after he was beaten and shot. Again, that's not true. On page 258 of the record, Mr. Warsami specifically explained that other people carried his brother back from the shop, but his brother was so badly injured. So in every one of these situations where there was something specific in the record, it's – it isn't there. There's nothing that supports it. As I said, it violates the three basic rules that this Court has had. It has to be subjective. You can't have a subjective determination. It has to go to the heart of the claim, and it's contradicted by the record. I mean, the only thing that you do have is, yes, he did not put that in the trans – in his G325. He gave an explanation, and there's nothing to contradict that in the record. And it is not inherently incredible. I would say – in fact, there's a recent decision out of the Seventh Circuit that just came out. So you would dismiss completely the I.J.'s – apparently the I.J. knows this lawyer very well. No, he doesn't, because as I pointed out, the I.J., in fact, almost every one of the findings he made relating to the story was, in fact, contrary to the record. For – as I mentioned, he mentioned, well, you don't know whether it's Fourth or Sixth Street. That's not what the testimony was. He says, you didn't explain how your brother got back from there. In fact, it was in the record. Where did you say that he didn't – where did you say it's in the record, how he explained? Which point? That how – How the brother got back? Page 258 of the certified record, he explains that the neighbors carried the brother back. So in every – The certified record. Yeah. Which is 173 of the transcript. I think so. I don't see that. Well, I'm pretty – What he says, he's talking – he says, how often do you go to the store on that page? He says, I swear I don't know. It was a long time ago. This was 1999. What period of time are they talking about there? He says, I don't know how many times. Well, I'm trying to see if I can find that specific point. Well, I'd ask you a different question. Okay. What period of time is he talking about when he says that was a long – how often did you go to the store, if you can remember? He says, I swear I don't know. This was a long time ago. It would have been 1990. It would have been 10 years earlier. 1980, 1999. 1990. Yeah, it would have been 10 years earlier. Let's see. I have – let's see. Where's the statement about carrying the brother back? In my brief, it's on page 20 in my brief. Where is it in the record? I had put down as a citation CAR-258. I don't have – because I flew here from Ohio, I don't have the entire thick record with me. I can provide a supplement. If there's an error on that, I will check it. I had in my brief CAR-258. See, we couldn't find it. I will check on that. But that was what I had referred to in there. But in that, there was a whole colloquy there about what happened, that whole issue. And he responded to each comment that was made by the judge and gave an answer to it. So as a result, when you look at each of those issues, I think that, in fact, you do not have specific findings related to the heart of the asylum claim that are the basis for the credibility determination. And I will have to check on that. He was not – this was not found to be a frivolous application. Yes, he did find it was frivolous on the basis of the G-325, which is my final argument. And in that argument, as I point out, every regulation and the warnings and everything referred to the 589, not the G-325. Where's the G? Where's the form? What's the thing that is the basis for the frivolousness? The fact that he didn't have those recent addresses. Where is it in the record? I think I have that included in the record excerpts. It's page 34 of the record excerpts that I provided to you. And that is the G-325. And that is the G-325 application that leaves – has his address in San Diego and it doesn't have the references to Minneapolis and Columbus, which he provided in the – Well, of course, you know what the judge was worried about was that this was a blatant attempt to beat the one-year rule. He doesn't make a finding related to the one-year rule. He makes a finding about his other places of employment. And he doesn't tie it into the one-year rule. And, in fact, if he did, I think the issue – answer would have been, as I recall, the NTA alleges a specific date for his date of entry, which was within the one year. There was no – that point of – there was no finding made that he's outside the one-year rule, because if that's it, he would have, as a matter of law, been not entitled to asylum. The judge did not make that finding. And I think the judge would have liked to have made that finding, but he couldn't, because there was nothing to contradict Mohamed's own – Mr. Warsami's own testimony about that point. I'd like to reserve a few moments. You have about a half a minute. Thank you. Patil. May it please the Court. My name is Jason Patil, and I represent the Respondent in this case. There's a few prefatory issues, just for purposes of clarification. The first is that if everything that Petitioner has argued in this brief and the replied brief is true, with respect to his contentions regarding the adverse credibility finding, this case cannot, as Petitioner requests, be simply granted by this Court, or if they request it direct to be granted. The immigration judge and agency specifically reserve a number of issues, including the Petitioner's burden of proof on the one-year bar, whether or not there was firm resettlement in the seven and a half years in Kenya, and even assuming credibility is satisfied, whether he has satisfied the other requirements for asylum. Well, let me ask you this. There was a frivolous finding that was based on this G325. Sure. And can you explain? Let me clarify that, Your Honor. I have trouble understanding what that is. Under Immigration and Nationality Act, Section 208, D4 and D6, if an individual submits evidence. I'm well aware of what the law is, and it prevents him from ever taking advantage of the laws again, but I'm not quite sure I understand what the basis for it was here. So if an alien submits evidence known to be fabricated in support of an asylum application, not just the application itself, any fact knowingly fabricated evidence, then the entire application can be deemed frivolous. All right? And so his, the Petitioner's argument that there's no statutory authority for the government's position is not quite correct to the extent that the biographic information form is a necessary component that must be submitted in conjunction with any asylum application. Well, let me ask this then. If that is so, and we have oodles of cases where there are adverse credibility findings, and, but we do not have oodles of cases where there is a frivolousness finding, and yet on the credibility findings, generally, at least there's some matchup between what is, what is, what is submitted to the INS for the, in the application and what is testified to, and so it would seem like almost everything would wind up being frivolous, and they aren't. So what's going on? We have a very unique case here. Why? In which he testifies that I signed this document under penalty of perjury knowing that the information was false. And the reason he explains, as offered by the Petitioner, is that an attorney advised me to falsely disclose residential and employment history. Okay. Where is that? Where is that in the record? I don't know. Where he says that and admits to it? I am not yet sure as to the location of, I'm not sure of that. I mean, it's briefed extensively in our brief with respect to the G325A as biographic information form. I mean, that, we concede, Petitioner's point, that it was the understanding of this individual that potentially an attorney suggested to him that his understanding was that he should do this for reasons of venue. The immigration judge found that to accept that explanation as a reasonable one, however, he would have to believe that the attorney had willfully ordered the Petitioner to sign the document under penalty of perjury knowing it was false. And the immigration judge found that that explanation was unreasonable. And instead, it was more likely that the alien may have been trying to subvert the one-year filing requirement from entry into the United States, for example. I'm trying to, that's what I'm trying, I'm trying to figure out what supports where the explanation of the frivolousness is. I'm sorry, Your Honor. I did not put that in my notes. I see lots, there's lots of documentation in your brief for the, for the inconsistencies. But, okay. I'm sorry, Your Honor. I could supplement with that site in the letter simply containing the site. Also, even if the Court is persuaded that the Petitioner's account of events in Somalia is credible, that should not preclude when this case is returned, these credibility issues from being decided with respect to whether he filed an application within one year. And the reason why some of these inconsistencies, those not relating to Somalia, relate to things like how he traveled to the United States, when he traveled to the United States, what airline he used, what residences he lived in, and all the different jobs he had, all of which would be problems for establishing by clear and convincing evidence that he has filed in one year. When someone shows up at a U.S. border checkpoint with nothing and says, I'm here to apply for asylum, but has no indication of how he arrived in the country, then there is a substantial credibility question here that would have to be decided on a remand. The Respondent has fabricated testimony. He has provided to the Court a biographic information which indicates very directly and specifically that he has been unemployed for the last five years and has misled the Court on his actual residence in the United States. In a normal case, this would not be a material representation. But it's central here because what he has done and where he has been is also relevant to establish who he is and how he came. And it speaks to when he fled and why he fled. If the Petitioner is unable to establish that he has recently come to the United States, it undercuts the rationale for his story. The immigration judge's decision in this case is supported by substantial evidence. And I will note that Petitioner makes some issue as to the immigration judge's behavior with respect to one of the witnesses. But as this Court has recognized in the Mendoza case, 298 F. 3rd, 852, the immigration judge's assessments of a certain person's demeanor is certainly something that this Court should defer to. And the immigration judge, there's no evidence that he spoke negatively or criticized the demeanor or behavior of the other two witnesses in this case, other than this one. Also, at 220- The counsel says that the moment that the Petitioner said, well, I was told to fabricate all this information, that the judge sua sponte had an obligation to somehow get a hold of the accused lawyer. And notwithstanding the absence of an IAC claim at that point, if it's effectively that, drag the lawyer in to verify this rather than indulge in speculation. First, there's no authority which supports the proposition of Petitioner. And, second, I would raise a potential jurisdictional issue with respect to this sort of argument, which really is articulated first time coherently in this oral argument, and that is there is a jurisdictional requirement as recognized by this Court in Alcaraz that they must exhaust their administrative remedies as a right as to arguments like this. And before the immigration judge, no such representation or argument was suggested. It was not placed before the Board. If you look at their brief to the Board at Administrative Record 19 through 25, that brief only argues the airline travel issue to the United States, the use of derogatory term Migden, and the Petitioner's residential history in Kenya. But those are the three points before the BIA, and so there wouldn't have been exhaustion and hence no jurisdiction to consider that argument here. There are a number of adverse credibility elements here that may not apparently on their face relate to the heart of the claim, but I would bring your attention to Kaznikowicz, which I supplemented last week as a citation to this Court, 400 F3D at page 816. And in that case, the Court affirming adverse credibility finding looks to things like nationality and residence in the United States, relatives or lack thereof in the United States, and a number of other what could be considered collateral factors, what could be considered as a whole when you have a large number of such inconsistencies in the testimony. It's a problem. I also want to respond to the contention that there's no actual material discrepancies relating to the heart of the claim. One of the immigration judges' findings that has not yet been responded to by the Petitioner is that Petitioner in his application says that members of my family have been executed in a brutal way in Somalia, and when asked for clarification on that by the judge to offer an explanation, he says nothing about this. He references a charge against an uncle, which is one family member, and there's no further explanation. Sotomayor, you don't have to overdo it. Okay. I'm sorry. The Respondent thanks the Court for its time, Your Honor. I would refer this Court to page 26 of the record, excerpts, where the judge really focuses, 26 and 27, that he saw it as an issue of forum shopping. Where is that in the official record? Because I've got the record here, not excerpts. Oh. It would be pages of the judge's page 0074 and 75, I think, from the certified record. But there he talks about the G325 issue as a matter of forum shopping. He doesn't refer to attempt to tie it into the date of entry. And frankly, whether he worked in Columbus, Ohio in the year 2000, how does that relate to his date of entry in 1998? Does the client represent that relatives had been executed? It did say that. And what happened when that was put on the chopping block? Was that substantiated? He referred to one specific point, as was discussed there, and then there were no further questions asked. So somebody was executed? He talked about one point. He referred to the one parent of his. And the uncle, excuse me, the one uncle of his. The uncle had been executed? And then no further. The uncle had been executed? Excuse me, Your Honor. His obligation is to respond. He gave a response and there's no follow-up. You don't answer questions. You just keep talking. The question is, you heard the counsel for the other side say that the representation was made that relatives had been executed. And when it got to the hearing, it turns out that wasn't the case. Is that right? I don't agree with that. He did say – I don't agree with that. Well, because he did say his testimony was, at the time, they said they're going to come back and kill everybody. We're going to come back and kill all of you Megdon. And that's – So you're conceding that it was an exaggeration, the representation that people had been executed? If his – within the context of that, yes. Okay. You have more than used your time. Thank you. The case just argued is submitted. We'll hear the next case for argument, which is United States v. Murguía-Oliveros. Thank you very much.
judges: Schroeder, Pregerson, Trott